**Charles John McCARTY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 93–147.**

Supreme Court of Wyoming.

Oct. 25, 1994.

Leonard D. Munker, State Public Defender, and Deborah Cornia, Appellate Counsel, Cheyenne, Representing appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., and D. Michael Pauling, Sr. Asst. Atty. Gen., Cheyenne, Representing appellee.

Before GOLDEN, C.J., and THOMAS, CARDINE,* MACY,** and TAYLOR, JJ.

TAYLOR, Justice.

Appellant contends the district court erred when it accepted his guilty plea to a charge of aggravated assault and battery without following the requirements of the Wyoming Rules of Criminal Procedure. Appellant also argues the district court abused its discretion in failing to grant a motion to withdraw his guilty plea prior to sentencing. On other matters, appellant claims the district court erred in denying a motion for appointment of substitute counsel and failed to grant adequate credit for time served in presentence incarceration.

We affirm.

## I. ISSUES

Appellant submits these issues:

ISSUE I

Did the trial court err by failing to comply with the conditions of Rule 11 when it accepted the Appellant's guilty plea?

ISSUE II

Did the trial court abuse its discretion in not allowing the Appellant to withdraw his guilty plea prior to sentencing?

ISSUE III

Did the trial court abuse its discretion by denying the Appellant the right to substitute appointed counsel?

ISSUE IV

Did the trial court err in not granting presentence incarceration credit against the appellant's minimum and maximum sentence?

The State of Wyoming restyles the issues as:

I. Whether any challenge to the trial court's substantial compliance with W.R.Cr.P. 11 should be barred as untimely and, to the extent that court departed from the rule, whether such should be deemed harmless?

II. Whether the trial court properly denied appellant's motion to withdraw his guilty plea?

III. Whether the trial court properly refused to appoint substitute counsel for appellant?

IV. Whether the trial court properly credited appellant for all [presentence] incarceration?

* Retired July 6, 1994.

** Chief Justice at time of oral argument.

## II. FACTS

In the early morning hours of October 24, 1991, Charles John McCarty (McCarty) went to the residence of his former girlfriend, Karma Andricci (Andricci), in Worland, Wyoming. Armed with a rifle, McCarty waited outside for Andricci to leave for work. At about 5:30 a.m., Andricci left her home to move her brother's car. After Andricci parked her brother's car, she noticed McCarty crouched near another vehicle. McCarty first pointed the rifle at Andricci and then lunged at her when she tried to flee. McCarty struck Andricci in the back of the head with the stock of the rifle, knocked her to the ground and began to choke her. When McCarty struck Andricci, the cartridge magazine fell out of the rifle. As McCarty tried to find the cartridge magazine, Andricci fled inside the house.

Hearing the commotion, Andricci's brother, John Dalton (Dalton), ran outside. McCarty pointed the rifle at Dalton and shouted, "John, don't do it." Dalton then heard a clicking sound as McCarty pulled the trigger. The rifle misfired. Unarmed, Dalton ran to safety and McCarty fled. The police discovered McCarty hiding near some vehicles in the area. McCarty was disarmed and placed under arrest. Tests revealed the firing pin of the rifle had struck the bullet in the chamber twice, but it had not fired.

McCarty was charged with two counts of aggravated assault and battery. On January 3, 1992, in an initial arraignment proceeding, the district court summarized the constitutional rights to which McCarty was entitled. McCarty acknowledged that he understood his rights, had received a copy of the Information, had read it and had discussed it with his attorney. The district court described the charges against McCarty and the potential penalties for those crimes. McCarty acknowledged that he understood the charges and the potential penalties. McCarty, assisted by counsel, entered pleas of not guilty.

On March 13, 1992, pursuant to a request made at the initial arraignment, another arraignment proceeding was held so McCarty could enter additional pleas to both counts of not guilty by reason of mental deficiency at the time of the alleged crime. Also on March 13, 1992, the district court ordered that the Information be amended to clarify that count one was a charge of aggravated assault and battery for the attack on Andricci in violation of Wyo.Stat. § 6–2–502(a)(ii) (1988).

On May 4, 1992, McCarty appeared at a change of plea proceeding. The district court verified that McCarty was satisfied with representation of his counsel and that he was not under the influence of alcohol or drugs or unable to understand the proceedings because of any mental illness or deficiency. The district court also inquired:

THE COURT: All right. At that previous arraignment, you were advised of your constitutional rights and your right to trial. As a matter of fact, the matter was set to begin trial today; is that correct?

THE DEFENDANT: Yes.

THE COURT: Do you wish this Court to go over any of those, to advise you again with regard to your constitutional rights?

THE DEFENDANT: No, your Honor.

McCarty also waived a re-reading of the charges or potential penalties.

The district court ascertained that McCarty had reviewed the terms of a proposed order, which memorialized the terms of the plea agreement reached by McCarty and the State. McCarty admitted that he had reviewed the terms of the plea agreement, in detail, with his attorney. The district court explained that under the plea agreement, the aggravated assault and battery charge for the attack on Dalton had been dismissed and replaced with a reckless endangerment charge and the penalty for that crime was up to one year in jail. McCarty entered a guilty plea to one count of reckless endangerment and a guilty plea to one count of aggravated assault and battery.

During the proceedings, the district court specifically inquired about McCarty's ability to understand the consequences of his change of pleas:

THE COURT: Do you think you understand the nature of these proceedings?

THE DEFENDANT: Yes.

THE COURT: Do you think you understand what you're doing today?

THE DEFENDANT: Pardon?

THE COURT: Do you think you understand what's going on here today and what you are doing?

THE DEFENDANT: Yes.

THE COURT: Have you been able to understand what your attorney has told you?

THE DEFENDANT: Yes, your Honor.

THE COURT: [Defense Counsel], based upon your contacts with your client in this matter, do you have an opinion as to whether or not he understands the nature of these proceedings and the consequences of his plea here today?

[DEFENSE COUNSEL]: Yes, I do, your Honor.

THE COURT: What is that opinion?

[DEFENSE COUNSEL]: I believe that he does understand the nature of the proceedings.

The district court determined that the two guilty pleas had been entered voluntarily.

A factual basis was established by the county attorney's presentation of a summary of the evidence that would have been presented at trial against McCarty. At one point, McCarty began equivocating about the accuracy of the factual summary based on his claim that he had no recollection of any of the events surrounding his crimes. The district court then conducted additional examination to assure the accuracy of the factual presentation and the voluntary nature of the change of pleas. The district court asked whether McCarty had discussed all possible defenses with his counsel. McCarty replied that he and his counsel had "talked at length" about possible defenses. McCarty reiterated that he did, indeed, wish to enter pleas of guilty to the two counts contained in the plea agreement.

On the reckless endangerment conviction, the district court sentenced McCarty to one year in the county jail. On the aggravated assault and battery charge, the district court deferred further action and placed McCarty on five years supervised probation as a first-time offender under Wyo.Stat. § 7–13–301 (1987 & Cum.Supp.1994). Among the specific conditions of probation, McCarty was prohibited from initiating "any contact, directly or indirectly, in writing or otherwise, with the victims or the victims' family members." He was also prohibited from purchasing or having any firearms in his physical possession or control.

On March 22, 1993, the State filed a petition to revoke McCarty's probation based on alleged violations of the conditions of his probation. The State alleged that McCarty had mailed a birthday greeting card and a letter to Andricci. The State also alleged that McCarty had in his possession a .22 caliber rifle with a homemade silencer.

Following a hearing, the district court revoked McCarty's probation. The district court found that McCarty had violated the terms of his probation when he contacted Andricci by mailing her a greeting card and a letter. Furthermore, the district court found that McCarty had violated his probation by having a firearm in his possession.

Before the district court imposed sentence, McCarty filed a motion to withdraw his guilty plea to the aggravated assault and battery charge. McCarty also demanded that his counsel be permitted to withdraw, so new counsel could be appointed to represent him. Both motions were denied by the district court. The district court sentenced McCarty to a term of incarceration for not less than five years nor more than seven years at the Wyoming State Penitentiary.

### III. DISCUSSION

■ Initially, we must address the State's contention that McCarty's appeal of his guilty plea to aggravated assault and battery is untimely. McCarty was placed on probation under the first-time offender program created by Wyo.Stat. § 7–13–301 which provides, in pertinent part:

(a) If a person who has not previously been convicted of any felony is charged with or found guilty of or pleads guilty to any misdemeanor except any second or subsequent violation of W.S. 31–5–233 or any similar provision of law, or any felony except murder, sexual assault in the first

or second degree or arson in the first or second degree, *the court may, with the consent of the defendant and the state and without entering a judgment of guilt or conviction, defer further proceedings and place the person on probation for a term not to exceed five (5) years upon terms and conditions set by the court.* The terms of probation shall include that he:

\* \* \* \* \* \*

(ii) Conduct himself in a law-abiding manner;

\* \* \* \* \* \*

(iv) Conform his conduct to any other terms of probation the court finds proper; \* \* \*

\* \* \* \* \* \*

(c) If the defendant violates a term or condition of probation at any time before final discharge, the court may:

(i) Enter an adjudication of guilt and conviction and proceed to impose sentence upon the defendant if he previously pled guilty to or was found guilty of the original charge for which probation was granted under this section; \* \* \*

\* \* \* \* \* \*

*(d) Discharge and dismissal under this section shall be without adjudication of guilt and is not a conviction for any purpose.*

(Emphasis added.)

At the time the district court deferred further action on the aggravated assault and battery charge and placed McCarty on probation, no sentence, in the traditional sense, was imposed. Wyo.Stat. § 7–13–301(d). In *Billis v. State*, 800 P.2d 401, 422 (Wyo.1990), we noted:

A criminal defendant upon whom a court has imposed a sentence cannot reject that sentence. The court has the power to force that sentence on the criminal defendant. Under W.S. 7–13–301, since the criminal defendant's consent is required, the criminal defendant is free to reject the tender of probation without entry of judgment. If this disposition were truly a sentence, then the criminal defendant could not reject it.

We conclude that under Wyo.Stat. § 7–13–301, this appeal was timely since it was filed after a judgment and sentence was imposed by the district court for the crime of aggravated assault and battery.

■  A guilty plea must be "knowing and voluntary." *Parke v. Raley*, —— U.S. ——, ——, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992). The validity of a guilty plea is tested by determining "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). *Accord Mehring v. State*, 860 P.2d 1101, 1109 (Wyo.1993) and *Osborn v. State*, 806 P.2d 259, 271 (Wyo.1991). A guilty plea incorporates a waiver of three constitutional rights: the privilege against self-incrimination; the right to a jury trial; and the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

■  The procedure utilized to accept a guilty plea is reviewed by this court as a whole. *Smith v. State*, 871 P.2d 186, 187 (Wyo.1994). "Our inquiry determines if the district court *sufficiently* described the nature of the charges, including the possible penalties; informed the defendant of the right to representation; informed the defendant of the rights waived by a guilty plea; and obtained a factual basis for the plea." *Mehring*, 860 P.2d at 1106 (emphasis added). These procedural requirements are intended to assure that the individual facing the criminal charges is not misled into an unintentional waiver of substantial rights. *Id.*

■  The change of plea proceeding occurred under the revised Wyoming Rules of Criminal Procedure, which became effective March 24, 1992. W.R.Cr.P. 11(b) directs, in pertinent part, that the defendant be informed of certain rights and consequences from the entry of a guilty plea:

(b) *Advice to Defendant.*—\* \* \* [B]efore accepting a plea of guilty or nolo contendere to a felony or to a misdemeanor when the defendant is not represented

by counsel, the court must address the defendant personally in open court and, *unless the defendant has been previously advised by the court on the record and in the presence of counsel,* inform the defendant of, and determine that the defendant understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law and other sanctions which could attend a conviction including, when applicable, the general nature of any mandatory assessments (such as the surcharge for the Crime Victim Compensation Account), discretionary assessments (costs, attorney fees, restitution, *etc.*) and, in controlled substance offenses, the potential loss of entitlement to federal benefits. * * *

\* \* \* \* \* \*

(2) The defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant;

(3) The defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to court process to obtain the testimony of other witnesses, and the right against compelled self-incrimination;

(4) If a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel, about the offense to which the defendant has pleaded guilty, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

(Emphasis added.) The district court is charged, by the language of W.R.Cr.P. 11(b), with making a determination that the defendant understands his rights and the conse-

quences of his plea. *Mehring*, 860 P.2d at 1108–09.

McCarty broadly challenges that the district court failed to follow the requirements of W.R.Cr.P. 11(b) during the change of plea proceeding. He initially asserts that the district court erred by failing to inform him of the elements of the crime of aggravated assault and battery. McCarty also finds error in the failure of the district court to advise him of his right to continue to plead not guilty, his right to court process to obtain witnesses for his defense, and the effect of a self-incrimination waiver. For these arguments, McCarty relies on a premise that he was impermissibly advised of his rights in installments which was a violation of our former Wyoming Rules of Criminal Procedure. *Crawford v. State*, 701 P.2d 1150, 1153 (Wyo.1985). We find no error in the procedure used by the district court.

McCarty's arguments fail, in part, because he is ignoring the modification W.R.Cr.P. 11 makes to past practice. The language of W.R.Cr.P. 15(c)(1), Wyo.Rep. 578–584 P.2d XIX (1978), directed the district court accepting a guilty plea to address the defendant and inform him of the nature of the charge without condition. However, the present W.R.Cr.P. 11(b) directs the court to personally address the defendant and, *"unless the defendant has been previously advised by the court on the record and in the presence of counsel,"* inform the defendant of his rights, and determine that the defendant understands those rights. (Emphasis added.) The language of W.R.Cr.P. 11(b) no longer requires the district court to perfunctorily repeat information on rights and consequences which has previously been conveyed during arraignment or during other on the record proceedings in the presence of counsel. However, we continue to acknowledge that the " 'better practice' " is to advise the defendant of his rights during the change of plea proceeding. *Mehring*, 860 P.2d at 1108 (*quoting* 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure*, § 20.4(c) at 642 (1984)).

McCarty is correct that the district court did not list the elements of the charge of aggravated assault and battery during the

change of plea proceeding. Wyo.Stat. § 6–2–502(a)(ii). However, McCarty acknowledged that he had previously been advised of the nature of the charges and the possible penalty. He specifically waived further advisement. McCarty also acknowledged during the change of plea proceeding that he had reviewed the terms of the plea agreement in detail with his counsel.

In *Mehring*, 860 P.2d at 1107–08, we examined whether a district court must inform the defendant of the elements of a charged crime prior to accepting a guilty plea. We held that a complete listing of the elements of the charged crime is not mandatory. *Id.* at 1108. " '[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.' " *Id.* (*quoting Henderson v. Morgan*, 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976)). We also acknowledged that W.R.Cr.P. 11(b) incorporates the presumption that "a defendant's discussions with his counsel will include descriptions of the plea bargain and the elements of the offense." *Mehring*, 860 P.2d at 1108.

Our review of the colloquy between the district court and McCarty during the change of plea proceeding discloses that a sufficient description of the nature of the charge was provided to assure that McCarty was making a voluntary and intelligent choice to enter a plea of guilty to aggravated assault and battery. McCarty understood that he was originally charged with attempted murder for his attack on Andricci. He knew that charge had been dismissed and an aggravated assault and battery charge had been filed. McCarty received notice of this charge at his arraignment and by receipt of a written copy of the Information. The Information had been amended, prior to the change of plea proceeding, to reflect the proper statutory section in the charge. McCarty admitted during the change of plea hearing that his counsel explained the plea agreement to him and that he understood the nature of the charge. McCarty's counsel also affirmed that McCarty understood the nature of the proceeding and the consequences of a guilty

plea. We hold that McCarty understood the nature of the charge and that he was sufficiently advised of the elements of the offense as required by W.R.Cr.P. 11(b)(1). *Mehring*, 860 P.2d at 1108.

Next, McCarty argues that reversible error occurred when the district court failed to advise him during the change of plea proceeding of his right to persist in a not guilty plea, his right to court process to obtain witnesses for his defense, and the effect of a self-incrimination waiver. When we consider the totality of the circumstances, we do not find reversible error.

At his initial arraignment, the district court advised McCarty that he had a right to plead not guilty. The district court informed McCarty that if he persisted in that plea, a trial would be held where the State would be required to prove his guilt beyond a reasonable doubt. During the change of plea proceeding, when McCarty began to equivocate about the factual basis for the charge, the district court reiterated to McCarty that he did not have to enter a guilty plea at that time. McCarty affirmed that he wanted to enter the guilty plea. We hold McCarty was sufficiently informed of his right to persist in a not guilty plea. W.R.Cr.P. 11(b)(3).

During the initial arraignment proceeding, McCarty was also informed that if he elected to plead not guilty, his counsel would be able to cross-examine any witnesses presented by the State and that McCarty could present any favorable evidence that he might have in his defense. The district court cautioned McCarty that if he entered a plea of guilty he would be giving up the right to confront any witnesses that would have testified against him. McCarty was told that if he entered a guilty plea, there would be no trial. At the change of plea proceeding, McCarty admitted that he had previously been advised of his constitutional rights, including his right to trial. McCarty waived further advisement. During all proceedings, McCarty was represented by competent counsel. In light of the detailed advisements McCarty received on his right to trial, any error in failing to advise McCarty of his right to court process to obtain witnesses under W.R.Cr.P. 11(b)(3) was harmless. W.R.Cr.P. 11(h).

At his initial arraignment, the district court advised McCarty that he had a right against self-incrimination. McCarty was also advised that the entry of a guilty plea would result in an admission in open court that he committed the crime of aggravated assault and battery. During the change of plea proceeding, the district court did not question McCarty under oath, on the record, in the presence of counsel. Therefore, there was no need to provide a warning for possible prosecution for making a false statement. W.R.Cr.P. 11(b)(5). Any failure to provide this advisement was harmless. W.R.Cr.P. 11(h). We hold McCarty made a voluntary and intelligent choice to waive his right against self-incrimination when he entered a plea of guilty.

■ Finally, McCarty contends the district court failed to ascertain that the plea was not the result of coercion, threats or promises apart from the plea agreement. W.R.Cr.P. 11(d) requires:

(d) *Insuring that plea is voluntary.—* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

A colloquy with precise language inquiring about the voluntary nature of the plea may have given this record an improved "appearance." However, the district court specifically found that McCarty entered his plea to aggravated assault and battery voluntarily, "without any improper inducement or conditions and free from coercion." We hold the district court questioned McCarty and his counsel directly and with sufficient intensity to determine if the plea was voluntary. W.R.Cr.P. 11(d).

The record discloses that the procedure was sufficient to insure that McCarty was not misled into a waiver of any of his substantial rights. The discretionary means utilized by the district court to advise McCarty of his rights was not ideal. *Mehring,* 860 P.2d at 1108. However, this court has counseled that use of specific language is not a substitute for understanding.

The courts of our land do not function with scripts requiring each participant to perform his or her specific part in the same manner on each occasion. We should never mistake the presence of the printed or spoken word for comprehension. A ritualistic expression of verbiage, complete with legal terminology and excess, may provide a comfortable layer of support for technically demanding members of the bar, but would provide little real assurance that the accused actually understands what is about to be accomplished.

*Id.* at 1108–09.

When the totality of the circumstances is considered, there is no doubt that McCarty made a voluntary and intelligent choice to enter a guilty plea. His guilty plea was the result of a carefully bargained for plea agreement which included promises from the State not to pursue other charges and to request that pending federal prosecution be held in abeyance. McCarty admitted that his counsel had explained this agreement to him in detail and that they had discussed possible defenses at length. Faced with overwhelming evidence of guilt, McCarty made a carefully considered decision to plead guilty to aggravated assault and battery and gain the benefit of a treatment as a first offender.

■ In his second issue on appeal, McCarty contends the district court should have permitted him to withdraw his guilty plea to aggravated assault and battery. W.R.Cr.P. 32(d) governs the withdrawal of a guilty plea:

(d) *Plea withdrawal.—*If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice.

This court has determined that prior to sentencing, there is no absolute right to with-

draw a plea of guilty. *Triplett v. State*, 802 P.2d 162, 165 (Wyo.1990).

The district court patiently listened to McCarty's reasons for withdrawing his guilty plea. Despite his on the record acceptance of the plea agreement, McCarty argued that the written order memorializing the plea agreement did not include his full understanding with the State. Without substance, McCarty also asserted that his counsel had withheld exculpatory evidence from him. McCarty maintained that as a result of counseling he had recently regained his memory of the incidents which lead to the charge of aggravated assault and battery and had discovered new evidence. McCarty argued that he could produce this evidence at trial and establish his innocence. When the district court asked for specific information, McCarty replied that he could not do that without new counsel.

McCarty filed his motion to withdraw his guilty plea before sentence was imposed on the aggravated assault and battery charge. Wyo.Stat. § 7-13-301(d). Therefore, the district court, at its discretion, could have permitted withdrawal of the guilty plea if McCarty had demonstrated a "fair and just reason." *Dichard v. State*, 844 P.2d 484, 486 (Wyo.1992). However, McCarty's "reasons" for withdrawing his plea were merely conclusive statements. The district court correctly noted that even after McCarty had supposedly regained his memory, it was not important until his probation was revoked. McCarty voluntarily entered a plea of guilty to aggravated assault and battery. The district court did not abuse its discretion in denying the motion to withdraw the guilty plea. *Id.* at 486-87.

■ In his third issue, McCarty contends the district court erred when it denied a motion to permit his court appointed counsel to withdraw. McCarty said he had no confidence in his counsel. The record demonstrates that McCarty's counsel performed with a level of proficiency which exceeded the level of competent assistance. McCarty's argument was comprised of unsubstantiated conclusions. The district court did not abuse its discretion in denying the motion for with-

drawal. *Epperson v. State*, 637 P.2d 671, 673 (Wyo.1981).

■ In his final issue, McCarty claims the district court failed to properly credit all the time served in presentence incarceration off the minimum and maximum sentences imposed for the aggravated assault and battery conviction. We agree with the State that the record simply does not support McCarty's contentions. The district court did not abuse its discretion in limiting the credit granted for time served in presentence incarceration. The district court properly granted credit for the time served after McCarty's arrest for violating his probation. *Jones v. State*, 771 P.2d 368, 372 (Wyo.1989).

## IV. CONCLUSION

While the decision to plead guilty is a profound one, every defendant is required to make important decisions once criminal proceedings have begun. *Godinez v. Moran*, — U.S. —, —, 113 S.Ct. 2680, 2686, 125 L.Ed.2d 321 (1993). McCarty made a voluntary and intelligent choice to enter a guilty plea to aggravated assault and battery. Unfortunately, for him, he made another choice to violate the terms of his first offender probation. Despite technical deficiencies, the procedural safeguards employed in this case adequately guaranteed that due process and other constitutional rights were protected.

The judgment and sentence of the district court is affirmed.